UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

SCOTT P. KNIGHT, as
trustee of Knight Living
Trust, a Florida Trust,

         Plaintiff,

v.                                    Case No:  2:24-cv-592-JES-NPM

MARKEL AMERICAN INSURANCE
COMPANY, a foreign
corporation,

         Defendant.

_____

**OPINION AND ORDER**

This matter comes before the Court on Defendant Markel
American Insurance Company's (Defendant) Motion for Summary
Judgment (Doc. #52) filed on August 1, 2025. Plaintiff Scott P.
Knight, as trustee of Knight Living Trust, (Plaintiff) filed a
Response in Opposition (Doc. #56) on September 4, 2025. No reply
was filed and the time to do so has now expired. M.D. Fla. R.
3.01(d). For the reasons set forth below, the motion is granted
in part and denied in part.

**I.**

Summary judgment is appropriate only when the Court is
satisfied that "there is no genuine dispute as to any material
fact and that the movant is entitled to judgment as a matter of
law." Fed. R. Civ. P. 56(a). "An issue of fact is 'genuine' if

the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." Baby Buddies, Inc. v. Toys "R" Us, Inc., 611 F.3d 1308, 1314 (11th Cir. 2010). A fact is "material" if it may affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "A court must decide 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004)(quoting Anderson, 477 U.S. at 251).

In ruling on a motion for summary judgment, the Court views all evidence and draws all reasonable inferences in favor of the non-moving party. Scott v. Harris, 550 U.S. 372, 380 (2007); Tana v. Dantanna's, 611 F.3d 767, 772 (11th Cir. 2010). However, "if reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment." St. Charles Foods, Inc. v. America's Favorite Chicken Co., 198 F.3d 815, 819 (11th Cir. 1999)(quoting Warrior Tombigbee Transp. Co. v. M/V Nan Fung, 695 F.2d 1294, 1296-97 (11th Cir. 1983)(finding summary judgment "may be inappropriate even where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from these facts")). "If a reasonable fact finder evaluating the evidence could draw more

2

than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment." Allen v. Bd. of Pub. Educ., 495 F.3d 1306, 1315 (11th Cir. 2007).

## II.

The parties agree to these undisputed facts: In March 2022, Defendant issued Plaintiff an insurance policy (the Policy) covering Plaintiff's fifty-seven-foot yacht (the Vessel). (Doc. #56, p. 3, ¶ 2.) The Policy includes a windstorm haul-out provision (the Provision). (Id. ¶ 3.) The Provision required the Vessel to be hauled out of the water and onto land in the event a windstorm warning was issued for its present location. (Id. ¶¶ 3-5.) Such a windstorm warning was issued on September 26, 2022. (Id. ¶ 6.) The Vessel was not hauled out of the water or placed on land. (See id. ¶ 10.) The Vessel sank on September 28, 2022, because of Hurricane Ian. (Id. ¶ 9.)

Plaintiff, through an affidavit, details the efforts taken to haul out the Vessel. (See Doc. #56-1.) After the Policy was issued but before the windstorm warning was issued, Plaintiff "attempted to find a marina or facility that would haul out the [Vessel] and place it upon land upon the issuance of a windstorm warning." (Id. ¶ 3.) Plaintiff "contacted and inquired" with "every location that [he] could find within a large radius" of the Vessel's location. (Id. ¶ 4.) Every facility informed

3

Plaintiff they would haul out the Vessel only if Plaintiff joined that facility's "storm haul out list." (Id.) Plaintiff attempted to get on every list. (Id.) But the lists were full, so no facility was accepting new vessels onto their list. (Id.) At most, Plaintiff was offered to join waitlists "that in each case was hundreds of vessels long" with the hope of gaining admission within three or four years, at the earliest. (Id.) Facilities further informed Plaintiff that they "had limited or no location to put the [V]essel on land" even if it could be hauled out. (Id. ¶ 6.)

When the windstorm warning was issued, the Vessel was moored at a marina that did not have haul out capabilities. (Id. ¶ 2.) Plaintiff was abroad in Switzerland. (Id. ¶¶ 2, 9.) Even if Plaintiff had been on location, as a senior citizen with only one leg, he did not have the "capability, knowledge or skills necessary to personally haul out" the Vessel. (Id. ¶ 10.) Plaintiff contacted Captain Jason Dunwoody, with whom Plaintiff had an oral agreement to help in case of any windstorm, (Doc. #56, p. 3, ¶ 14), in an "attempt to move the [V]essel to an area outside of the named storm area or to the have [it] hauled out and placed on land." (Doc. #56-1, ¶ 9.) Captain Dunwoody made inquiries, but again no location was willing to haul out the Vessel. (Id.) Captain Dunwoody also indicated moving the Vessel was not an option. (Id.)

4

The parties agree that Plaintiff submitted a claim to Defendant after the Vessel sank, who issued a coverage disclaimer because the Vessel had not been hauled out of the water and placed on land after the windstorm warning was issued. (Doc. #56, p. 3, ¶ 17-18.) The parties also agree that the Vessel had been hauled out of the water twice before it sank, once for survey and once for repairs. (Id. ¶ 11.)

## III.

Plaintiff's operative complaint seeks a declaration that the Policy provides coverage for this loss. (Doc. #40, ¶ 28.) Plaintiff's requested declaration rests on two theories. (See id. ¶ 26.) First, that "Defendant has breached its policy by asserting the Plaintiff's breach of the [P]rovision as a defense when the [P]rovision could not be reasonably complied with by [Plaintiff]" within the meaning of Florida Statute § 627.409(2). (Id. ¶ 20.) That statute provides:

> A breach or violation by the insured of a warranty, condition, or provision of a wet marine or transportation insurance policy, contract of insurance, endorsement, or application does not void the policy or contract, or constitute a defense to a loss thereon, unless such breach or violation increased the hazard by any means within the control of the insured.

Fla. Stat. § 627.409(2). Second, Plaintiff asserts that the Provision "violates the stated public policy of Florida[,] which prohibits requiring vessel owner[s] to be contractually or

otherwise obligated to remove their vessels from their marina slips upon the issuance of a windstorm warning." (Id. ¶ 24.)

Defendant moves for summary judgment, arguing that each theory fails as a matter of law. (Doc. #52, p. 5.) Defendant argues the first theory fails because "the undisputed facts fully satisfy" § 627.409(2). (Id.) Defendant argues the second theory fails because "not a single Florida court has held such a broad public policy exists, nor does federal law support such state public policy be newly declared by the federal courts." (Id. at p. 6.) Each argument will be addressed in turn.

## A. Florida Statute § 627.409(2)

Known as Florida's anti-technical statute, Florida Statute § 627.409(2) "is designed to prevent the insurer from avoiding coverage on a technical omission playing no part in the loss." Travelers Prop. Cas. Co. of Am. v. Ocean Reef Charters LLC, 71 F.4th 894, 905 (11th Cir. 2023)(quoting Pickett v. Woods, 404 So. 2d 1152, 1153 (Fla. 5th DCA 1981)). Under this statute, Plaintiff's failure to have the Vessel hauled out of the water and placed on land must have "increased the hazard by any means within the control of the [Plaintiff]." Fla. Stat. § 627.409(2). The record establishes that Plaintiff's failure to haul out the Vessel "increased the hazard," but creates a question of fact for the jury as to whether it did so "by any means within the control of the" Plaintiff.

**(1)  Increase of Hazard**

Whether a breach or violation increased the hazard "is typically a question of fact for the jury." Travelers, 71 F.4th at 905 (quoting Serendipity at Sea, LLC v. Underwriters at Lloyd's of London Subscribing to Pol'y No. 187581, 56 F.4th 1280, 1290 (11th Cir. 2023)). "Hazard" here "refer[s] to danger to the insured vessel itself." Eastern Ins. Co. v. Austin, 396 So. 2d 823, 825 (Fla. 4th DCA 1981). The breach or violation must have "had some material effect on the [particular] loss" suffered. Travelers, 71 F.4th at 906. See also Windward Traders, Ltd. v. Fred S. James & Co. of New York, 855 F.2d 814, 818 (11th Cir. 1988)(holding that § 627.409(2) precluded insurer from denying coverage for a sunk boat despite insured's failure to notify underwriters of boat's location, as required by a policy provision, because "failure to notify . . . obviously played no part in causing the" boat to sink).  The relevant question here is whether Plaintiff's failure to haul the Vessel out of the water and onto land increased the Vessel's danger of sinking.

On the record in this case, the answer is clearly yes. Plaintiff's argument to the contrary is that "Defendant has not established that the [V]essel[,] if hauled out and [put] on land[,] would have fared any better." (Doc. #56, p. 14.) Plaintiff relies on Defendant's exhibit stating that Hurricane Ian caused the coast and inland to suffer storm surge of up to

7

fifteen feet.[1] (Id. at p. 9)(citing Doc. #52-4, pp. 25, 46.)[2] But

Plaintiff's argument addresses the wrong question. The question

raised by the statute in this case is whether Plaintiff's failure

increased the Vessel's danger of sinking, not whether the Vessel

would have avoided damages if Plaintiff had complied with the

Provision.

A similar argument was rejected by the Eleventh Circuit in

Oretsky v. Infinity Ins. Co., 524 F. App'x 517 (11th Cir. 2013).[3]

There, the insured's car was stolen from his driveway and the

insurer denied coverage, partly because the car wasn't parked in

a closed and locked garage, as a policy provision required. Id.

at 519. The insured argued that leaving the car in the driveway

could not have increased the hazard pursuant to § 627.409(2)

because the car "would have been stolen even if it had been

parked in the garage, given that the thieves broke into the

garage and stole the keys." Id. at 524. The Eleventh Circuit

---

[1] Defendant asks for the Court to take judicial notice of certain exhibits, including this one. (Doc. #51.) The request is granted as to this exhibit since both sides rely upon it.

[2] Defendant labeled this exhibit as "Exhibit 3." However, the exhibit appears on the Court's CM/ECF system as Exhibit 4. The Court will cite each exhibit herein by the numerical number assigned to it by the Court's CM/ECF system.

[3] "Unpublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants." Bonilla v. Baker Concrete Const., Inc., 487 F.3d 1340, 1345 n.7 (11th Cir. 2007).

rejected the argument, pointing out that the statute "does not require a policy violation to be the sole cause of the loss, but only requires the violation to 'increase[ ] the hazard by any means within the control of the insured.'" Id. at 525 (quoting Fla. Stat. § 627.409(2)). The Eleventh Circuit concluded that the insurer was not precluded "from denying coverage based on the garage requirement," because "even if parking the [car] in the garage ultimately would not have prevented the theft, [the insured]'s failure to do so certainly increased the danger of theft." Id.

The same conclusion is appropriate here. "[E]ven if [hauling the Vessel out of the water and placing it on land] ultimately would not have prevented the [sinking], [Plaintiff]'s failure to do so certainly increased the danger of [the Vessel sinking]." Id. Since no reasonable jury could find otherwise, this portion of Defendant's motion is granted.

### (2) Under Plaintiff's Control

The parties dispute the meaning of "control" pursuant to § 627.409(2). Defendant argues that "control" under the statute "should be interpreted as control over the insured property itself." (Doc. #52, p. 16.) Plaintiff responds that "control" of the breaching conduct is what matters. (Doc. #56, p. 13.)

"When we construe statutes, 'our first (and often only) step . . . is to ask what the Legislature actually said in the

statute, based upon the common meaning of the words used' when the statute was enacted." <u>Tsuji v. Fleet</u>, 366 So. 3d 1020, 1025 (Fla. 2023)(quoting <u>Shepard v. State</u>, 259 So. 3d 701, 705 (Fla. 2018)). "To determine its best reading, we 'exhaust all the textual and structural clues' that inform its meaning." <u>DeSantis v. Dream Defs.</u>, 389 So. 3d 413, 418 (Fla. 2024)(citation modified)(quoting <u>Conage v. United States</u>, 346 So. 3d 594, 598 (Fla. 2022)). A reading of a statute is unfair if it ignores its text, context, and structure. <u>Justice v. Guerrero-Justice</u>, 403 So. 3d 375, 377 (Fla. 3d DCA 2025).

The text, context, and structure of § 627.409(2) dictates that control of the breach is what matters. The statute's entire focus is on the breach of a policy warranty, condition, or provision. <u>See</u> Fla. Stat. § 627.409(2)("<u>A breach or violation</u> by the insured <u>of a warranty, condition, or provision</u> . . . does not void the policy . . . <u>unless such breach or violation</u> increased the hazard by any means within the control of the insured."(emphasis added)). Nowhere does the statute's text mention control of the insured property. Additionally, legislative materials from 1971, when this language first became law, indicate it was meant to prevent "losses [from] go[ing] unpaid when a . . . <u>breach</u> had nothing to do with the loss or <u>was not controllable by the insured</u>." <u>Staff Analyses & Legislative Documents</u>, Session Law 71-045,

https://ir.law.fsu.edu/staff-analysis/12, p. 9. (emphasis added). What § 627.409(2) requires is a breach of a warranty, condition, or provision "by any means within the control of the insured." Id.

A genuine issue of material fact remains as to whether the alleged breach —Plaintiff's failure to haul the Vessel out of the water and place it on land— was by any means within Plaintiff's control. Plaintiff's affidavit states that neither he, the marina where the Vessel was moored, or anyone else was able to haul the Vessel out of the water and place it on land. (Doc. #56-1.) Defendant rejects this contention, pointing to the undisputed fact that Plaintiff was previously able to haul out the Vessel on two (non-hurricane) occasions. (Doc. #52, p. 4, ¶ 11.) This dispute regarding control must be resolved by a jury, so this portion of Defendant's motion is denied.

## B. Public Policy

The last issue concerns the existence and applicability of a purported Florida public policy. Plaintiff asserts that Florida's public policy is "that lives and safety are placed before the interests of protecting property." (Doc. #40, ¶ 21.) Plaintiff argues that "[s]aid stated public policy prohibits requiring vessel owners to remove their vessels from their marina slips when a windstorm storm is approaching," (id.), and therefore Defendant cannot deny coverage based on breach of the

Provision. (Id. ¶ 28.) Defendant responds that no such Florida public policy exists or precludes it from denying coverage for breach of the Provision.

The Florida Supreme Court has "recognize[d] that '[u]nless restricted by statute or public policy, insurance companies have the same right as individuals to limit their liability and impose conditions upon their obligations." Washington Nat. Ins. Corp. v. Ruderman, 117 So. 3d 943, 951 (Fla. 2013)(quoting Canal Ins. Co. v. Giesenschlag, 454 So.2d 88, 89 (Fla. 2d DCA 1984)). Public policy can "be said to be the community common sense and common conscience, extended and applied throughout the state to matters of public morals, public health, public safety, public welfare, and the like." Harris v. Gonzalez, 789 So. 2d 405, 409 (Fla. 4th DCA 2001)(quoting City of Leesburg v. Ware, 113 Fla. 760, 153 So. 87, 89 (Fla. 1934)). Because what one person considers bad public policy "another might think altogether excellent public policy," the Florida Supreme Court has long left it to "the province of the statesman, and not the lawyer, to discuss, and of the Legislature to determine, what is the best for public good, and to provide for it by proper enactments." Atl. Coast Line R. Co. v. Beazley, 45 So. 761, 786 (Fla. 1907). See also Saunders v. Saunders, 796 So. 2d 1253, 1254 (Fla. 1st DCA 2001)("Public policy is determined by the legislature through its statutory enactments.").

Additionally, federalism principles prescribe that "[federal courts are] not an appropriate forum for pronouncing [a state's] public policy where the state constitution, statutes or judicial opinions give no clear indication that such policy is 'well defined and dominant.'" S. Solvents, Inc. v. New Hampshire Ins. Co., 91 F.3d 102, 105 n.1 (11th Cir. 1996)(alteration in original)(quoting American Home Assurance Company v. Stone, 61 F.3d 1321, 1329 (7th Cir. 1995)). Even if such a public policy is identified, it must be weighed against Florida's "strong public policy favoring freedom of contract." City of Largo v. AHF-Bay Fund, LLC, 215 So. 3d 10, 16 (Fla. 2017). "[T]he countervailing public policy must be sufficiently important that it outweighs the policy protecting freedom of contract." Mazzoni Farms, Inc. v. E.I. DuPont De Nemours & Co., 761 So. 2d 306, 312 (Fla. 2000).

There is no clear indication that Florida has a well-defined public policy as described by Plaintiff or that such a policy outweighs Florida's longstanding and strong public policy favoring freedom of contract. Plaintiff relies on two cases to establish the existence of the purported public policy: Burklow & Assocs., Inc. v. Belcher, 719 So. 2d 31 (Fla. 1st DCA 1998) and Columbia Properties Stuart, LLC v. Wilkes, No. 05-14369-CIV, 2006 WL 8433938 (S.D. Fla. June 22, 2006). The second case is

13

not binding authority, and neither clearly indicate such a public policy exists in the insurance context at issue here.

In both Burklow and Columbia, marinas sued vessel owners for not removing their vessels upon the issuance of hurricane warnings despite their dockage agreements mandating such action. In both cases, the courts ruled the lawsuits were barred by Florida Statute § 327.59(1), which explicitly states "that protecting lives and safety of vessel owners is placed before interests of protecting property." Both cases reasoned that this was Florida's public policy. See Burklow, 719 So. 2d at 34; Columbia, at *4.

But neither Burklow, Columbia, nor § 327.59 clearly indicate that any such public policy applies to an insurance company. The Legislature could have outlawed all contracts or policies that required vessel owners to remove their vessels upon an issuance of a hurricane warning. But it did not do so. The Legislature specifically provided that "marinas may not adopt, maintain, or enforce [such] policies," Fla. Stat. § 327.59(1)(emphasis added), and then specifically defined "marinas." Fla. Stat. § 327.02(26).

"[W]here a statute enumerates the things on which it is to operate, or forbids certain things, it is ordinarily to be construed as excluding from its operation all those not expressly mentioned." Locke v. Hawkes, 595 So. 2d 32, 36–37 (Fla.

14

1992)(alteration in original)(quoting Thayer v. State, 335 So.2d 815, 817 (Fla. 1976)). Because § 327.59 only expressly mentions marinas, and Burklow and Columbia only delt with marinas, none clearly provide a basis for this Court to pronounce the public policy Plaintiff requests. See id.; See also Allstate Indem. Co. v. Wise, 818 So. 2d 524, 526 (Fla. 2d DCA 2001)("[S]trong public policy concerns . . . do not apply in [some] context[s] . . . ."). "[I]f the Legislature intended to exempt [insurers from enforcing haul out provisions pursuant to public policy] it would have expressly stated so." Davila v. State, 75 So. 3d 192, 196 (Fla. 2011).

Even if Plaintiff's purported public policy exists, Defendant correctly argues that Plaintiff has not shown that such a public policy outweighs Florida's strong public policy favoring freedom of contract. (Doc. #52, pp. 8-10.) Plaintiff's Response did not address this argument (see Doc. #56) and therefore any opposition was waived or forfeited. Schwarz v. Bd. of Supervisors on behalf of Vills. Cmty. Dev. Dists., 672 F. App'x 981, 983 (11th Cir. 2017) ("We agree with the district court that Plaintiffs waived these claims by failing to address them in their summary judgment response.") Alternatively, the Court finds nothing that suggests Plaintiff's purported public policy outweighs Florida's longstanding and strong public policy favoring freedom of contract.

Accordingly, it is now

**ORDERED:**

1. Defendant's Motion for Summary Judgment (Doc. #52) is **GRANTED IN PART AND DENIED IN PART.**

2. Pursuant to Florida Statute § 627.409(2), Plaintiff's failure to haul the Vessel out of the water and onto land "increased the hazard" as a matter of law. Whether such failure was "by any means within the control of the" Plaintiff is a disputed question of fact for the jury. There is no showing of a well-defined and dominant public policy which would void the Provision in this case or prevent Defendant from denying coverage based on breach of the Provision.

**DONE AND ORDERED** at Fort Myers, Florida, this __3rd__ day of October 2025.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies: Counsel of record

16